UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT L. MOORE                                        CIVIL ACTION

VERSUS                                                 NO. 17-1379

TOYOTA MOTOR CORPORATION,                              SECTION M (5)
*et al.*

## ORDER & REASONS

Before the Court is the motion for summary judgment submitted by defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyoda Gosei Co., Ltd. (collectively, "Defendants").[1] The plaintiff, Robert L. Moore ("Moore"), submitted an opposition on August 15, 2018, which was marked deficient for failure to include a statement of material facts as required by the Local Rules.[2] The Court granted Moore an extension of time to submit a statement of material facts until August 27, 2018.[3] On this date, although Moore had not yet filed the statement, the Court continued the October 22, 2018 trial setting and permitted Moore to file a supplemental opposition memorandum to Defendants' motion for summary judgment by February 25, 2019.[4] Moore did not file a supplemental opposition memorandum, but, in compliance with a further order of the Court,[5] he filed a statement of material facts to cure his original opposition's deficiency.[6]

---

[1] R. Doc. 98.
[2] R. Docs. 100, 101.
[3] R. Doc. 104.
[4] R. Doc. 107.
[5] R. Doc. 110.
[6] R. Doc. 111.

1

Defendants filed a reply in support of their motion for summary judgment.[7] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

I.   BACKGROUND

This case arises out of an allegedly defective airbag in a 2009 Toyota Corolla.[8] Moore seeks a declaration that Defendants are liable to him under the Louisiana Products Liability Act ("LPLA"), as well as damages and attorney's fees. Specifically, Moore claims that Defendants, as manufacturers of the defective airbag, are liable (1) for the airbag's being unreasonably dangerous in construction or composition and (2) in design, (3) for failure to provide an adequate warning, and (4) for nonconformity with an express warranty.[9]

Moore and his girlfriend, Kimberly Gross, sought to purchase the vehicle at a Toyota dealership in New Orleans East.[10] Gross purchased the 2009 Toyota Corolla in used condition for $12,971 on January 25, 2014.[11] At the time of the purchase, the vehicle had 9,948 miles on its odometer.[12] Moore and Gross acknowledge that the low mileage was one of the reasons that Gross purchased the vehicle.[13] Moore cannot recall whether he asked the salesperson if the car had been involved in any accidents.[14] Moore denies having the vehicle inspected, either by himself or by a mechanic, and denies asking for a car report.[15] Thus, Moore has no knowledge about the vehicle's pre-sale repair history.

---

[7] R. Doc. 114. Defendants later filed a motion for leave to file an additional reply (R. Doc. 112), even though Moore had not filed any supplemental opposition. The Court denied leave. R. Doc. 118.
[8] R. Docs. 20 at 5-7; 80.
[9] R. Docs. 20 at 9-11; 80 at 2-3. Moore directs an inadequate warning claim against only Toyoda Gosei. Co., Ltd. The Court dismissed with prejudice Moore's allegations of negligence, intentional tort, breach of contract, breach of warranty, negligent misrepresentation, fraud, and bad faith, as subsumed by his allegations under the LPLA, and as previously ordered by the magistrate judge. R. Doc. 74 at 14-16.
[10] R. Doc. 98-3 at 45.
[11] *Id.* at 196, 262; *see id.* at 44.
[12] *Id.* at 197.
[13] *Id.* at 47, 198.
[14] *Id.* at 49.
[15] *Id.* at 49-50. Moore does state that, in his opinion as a diesel engine mechanic, the car had not been in any prior accidents. *Id.* at 52.

As alleged in the complaint, while Moore was driving the Corolla on a residential street on January 25, 2016, the airbag suddenly deployed, causing Moore's vehicle to strike a utility pole.[16] Moore suffered severe head injuries, including brain damage and a total loss of his left eye, which treating physicians at University Medical Center of New Orleans attributed to ballistic fragments. While he was in the intensive care unit, Moore alleges that the New Orleans Police Department towed the Corolla.[17] Moore has no memory of the accident and complains of short-term memory loss as a result of the trauma.[18]

Moore's counsel took two photographs of the totaled vehicle before Gross sold it to her insurance company on February 11, 2016.[19] At the time of the accident, Gross estimated that the vehicle had approximately 70,000 miles on its odometer.[20] No expert has ever inspected the vehicle.[21] Moore admits that he does not know where the vehicle is currently located.[22]

## II. PENDING MOTION

In their motion for summary judgment, Defendants principally argue that Moore has produced insufficient evidence to satisfy his burden to show that Defendants are liable under the LPLA.[23] Specifically, Defendants point to the absence of the vehicle or any of its components, the lack of an expert's inspection of the vehicle or its components, Moore's failure to provide

---

[16] Moore had originally alleged, though, that the airbag deployed after the crash. R. Doc. 1-2 at 2.
[17] R. Docs. 20 at 5-6; 80.
[18] R. Doc. 98-3 at 57-60, 64.
[19] *Id.* at 205, 211-15, 225, 296-98. Before Gross sold the vehicle to her insurer, Gross's insurer also took some photographs of the vehicle for the purpose of determining a settlement amount. *Id.* at 222-25, 276-95, 320-29. Moore does not contend that any of these photographs assist in identifying either the manufacturer of the airbag module in the vehicle at the time of the crash or any defect in the module itself.
[20] *Id.* at 202.
[21] R. Doc. 98-1 at 2-3. Moreover, Moore's counsel has not filed a witness or exhibit list as the Court required in its order granting the continuance, which was granted in part to allow Moore time to retain an expert. R. Doc. 107 at 4-5. Indeed, the Court warned that "plaintiff's counsel has displayed significant ignorance of the Federal Rules of Civil Procedure, the Local Rules of this district, and the Court's scheduling order entered on November 9, 2017. The Court expects that all of plaintiff's subsequent filings and motions in this case will conform to these rules and this Order." *Id.* at 5.
[22] R. Doc. 98-3 at 3, 53.
[23] R. Doc. 98-2 at 2.

discovery responses disclosing specific areas of defect and supporting evidence as required by the LPLA, and Moore's failure to provide an expert report as required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.[24] Without evidence to show that the airbag in place at the time of Moore's accident was the original equipment airbag, Defendants contend there is no evidence to show that Defendants, who had different roles in distributing, designing, and manufacturing the vehicle and airbag components,[25] were "manufacturers" of the airbag in the vehicle at the time of the accident.[26]

Defendants thus argue that Moore cannot prove that the airbag had not been replaced, altered, or modified after leaving the control of the manufacturer. Therefore, Moore cannot show that the alleged unreasonably dangerous condition existed at the time the product left the control of the manufacturer, and so the manufacturing and design defect claims must fail.[27] Moreover, Defendants maintain that Moore has not identified a flaw in the manufacturing process,[28] demonstrated an alternative design,[29] specified a deficient warning or proposed an alternative warning,[30] or provided evidence of an express warranty that induced Gross to purchase the vehicle;[31] consequently, each claim for an unreasonably dangerous condition under the LPLA fails. And, Defendants continue, even if any of the aforementioned elements were met, there is no evidence to establish that the allegedly defective airbag proximately caused Moore's injuries, as

---

[24] *Id.* at 3 & n.11 (noting that no expert report has been produced from the expert Denson Engineers, Inc., who the plaintiff identified as its sole expert in response to an interrogatory seeking to identify witnesses who may testify at trial).
[25] *Id.* at 1 n.1. Toyota Motor Engineering & Manufacturing North America, Inc. is the sole defendant who argues it has no responsibility for the marketing, advertising, or distribution of the 2009 Toyota Corolla in question, and therefore cannot be held liable as the manufacturer of the vehicle.
[26] *Id.* at 6-8.
[27] *Id.* at 8-10.
[28] *Id.* at 10-12.
[29] *Id.* at 12-15.
[30] *Id.* at 16-17.
[31] *Id.* at 17-18.

Moore does not remember the accident, there were no witnesses, and Moore produces no evidence to demonstrate causation.[32]

In response, Moore's initial opposition argues that the lack of direct evidence is not fatal to his claims because he relies upon the doctrine of *res ipsa loquitur*, which permits him to use circumstantial evidence to show Defendants' liability. Moore contends that, after the period of discovery closes, he "will demonstrate at trial through the testimony of first responders, medical personnel, photographs, medical records, car fax reports, etc., which were all previously submitted to the defendants," the existence of the defect and its causation of his injuries.[33] Moore also claims that his discovery responses identified an alternative design for an airbag by referring generally to one that would not have deployed, explaining that "[s]imply because the plaintiff has not identified a specific model at this time does not indicate that he will not be able to produce or identify one at a trial on the merits."[34] Additionally, Moore asserts that "an alternative design … would be one that used compressed nitrogen or argon gas instead of sodium azide as used in the 2009 Toyota Corolla."[35] Alternatively, in his original opposition, Moore requested additional time to determine the best alternative.[36]

But Moore chose not to file any supplemental opposition to furnish expert testimony regarding an alternative design, although he was permitted an opportunity to do so. Instead, Moore finally filed a statement of material facts, which should have been filed months before with his original opposition and which should have been a list of disputed material facts rather than the argumentative memorandum he submitted. In the statement, Moore argued again that he would

---

[32] *See id.* at 14.
[33] R. Doc. 101 at 2.
[34] *Id.* at 3.
[35] *Id.*
[36] *Id.* at 4. The Court effectively granted Moore's request for additional time by continuing the October 2018 trial setting, in part, to allow Moore time to retain an expert and by permitting him to file a supplemental opposition to the motion for summary judgment. *See* R. Doc. 107 at 4-5.

depend upon the doctrine of *res ipsa loquitur* to prove his case and asserted that no expert testimony was necessary to prove the "relatively simple" products liability issue at hand.[37]

Defendants reply that Moore cannot overcome summary judgment on his manufacturing-and-design-defect claims by restating the conclusory allegations in his complaint or depending upon speculation that vague facts will be proven after a period of discovery.[38] Defendants posit that Moore's suggestion that photographs, car reports, and the testimony of medical personnel will prove the existence of a defect at trial is speculative and not proper summary judgment evidence as to the existence of a defect, as is Moore's general theorizing about an alternative design.[39] Even if Moore's proposed alternative design for the airbag to use an inflator other than sodium azide had a sound foundation despite being made by a layperson, Defendants' airbag did not use sodium azide in its inflator; therefore, Moore's alternative is inapposite and his claim for a design defect fails.[40]

Additionally, Defendants cite *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 938 So. 2d 35, 51 (La. App. 2006), to illustrate the inapplicability of *res ipsa loquitur* in this case, where the evidence does not exclude an inference of the plaintiff's own responsibility or that of others besides Defendants in causing the accident.[41] But even if *res ipsa loquitur* were to apply, Defendants also rely on *Edwards v. Ford Motor Co.*, 934 So. 2d 221 (La. App. 2006), to show that Moore fails to meet his burden under that doctrine because Moore has not addressed the manufacturers' plausible alternative theories of causation – namely, that Moore crashed the vehicle, causing the airbag to deploy; that the airbag was replaced or tampered with; and that

---

[37] R. Doc. 111 at 3-4.
[38] R. Doc. 114 at 2.
[39] *Id.* at 3, 8.
[40] *Id.* at 8 & n.35.
[41] *Id.* at 4-5. Defendants also contend that Moore fails to demonstrate the other prerequisites to invoking the doctrine of *res ipsa loquitur* because Defendants suggest Moore's injuries plausibly resulted from a gunshot rather than the airbag alone. *Id.* at 5 n.22.

Moore's injuries were actually caused by a gunshot wound.[42] Thus, Moore cannot show that his injuries were proximately caused by a defect of the manufactured airbag.[43] Also, Defendants argue that because Moore did not address or dispute their arguments regarding his claims for a defect in warning or nonconformance to an express warranty, those claims should be dismissed.[44]

## III.   LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive

---

[42] *Id.* at 7, 9-11. Defendants submit the deposition of Eric Patrick, M.D., Moore's treating radiologist, and the affidavit of radiologist Cynthia Day, M.D., in support of their contention that the injuries were likely caused by a gunshot rather than the airbag's deployment. *Id.* at 9-11.
[43] *Id.* at 8-11.
[44] *Id.* at 3.

7

law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in

order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Louisiana Products Liability Act

The LPLA prescribes "the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Under the LPLA, a plaintiff may only recover against a manufacturer "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." *Id.* 9:2800.54(A). The statute further limits recovery for damage resulting from "unreasonably dangerous" characteristics to four theories of liability: (1) unreasonably dangerous in construction or composition;[45] (2) unreasonably dangerous in design;[46] (3) unreasonably dangerous for failure to provide an adequate warning;[47] and (4) unreasonably dangerous for nonconformity to an express warranty.[48] *Id.* 9:2800.54(B). The unreasonably dangerous characteristic "must exist at the time the product left control of its manufacturer." *Id.* 9:2800.54(C). The plaintiff bears the burden of proving each of these elements of the LPLA. *Id.*; *see also Johnson v. Transwood, Inc.*, 2015 WL 5680369, at *3 (M.D. La. Sept. 25, 2015) (an unreasonably dangerous condition is not presumed solely because an injury occurred).

#### 1. Manufacturer

To recover under any of the four theories that render a product unreasonably dangerous, the claimant must first prove that the defendant is the "manufacturer" of the product. *See Johnson*,

---

[45] *See* La. R.S. 9:2800.55.
[46] *See id.* 9:2800.56.
[47] *See id.* 9:2800.57.
[48] *See id.* 9:2800.58.

9

2015 WL 5680369, at *4. While a "manufacturer" is defined as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce," the statute also recognizes that manufacturers may be the following:

> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
>
> (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer.

*Id.* 9:2800.53.

Here, Defendants make two arguments as to why Moore has not met his burden of proving that Defendants are the manufacturers of the allegedly unreasonably dangerous airbag. First, Toyota Motor Engineering & Manufacturing North America, Inc. submits that it is not a manufacturer because it had no responsibility for the marketing, advertising, or distribution of the 2009 U.S.-bound Toyota Corolla.[49] Second, while the other Defendants do not deny having played certain roles that may qualify them as "manufacturers" of the original airbag,[50] they contend that there is no evidence to show that the airbag installed in the vehicle at the time of the accident was the original airbag.[51] Neither Moore nor Gross conducted an inspection of the used vehicle to identify the airbag make or model at the time of purchase or since, and the vehicle's current whereabouts are unknown.[52] Therefore, Moore has failed to rebut the plausible alternative that his

---

[49] R. Doc. 98-2 at 1 n.1.
[50] *Id.* at 1 n.1 & 6.
[51] *Id.* at 6.
[52] *Id.* at 6-7.

vehicle had an after-market replacement airbag that Defendants did not manufacture.[53] The Court agrees; Moore has not demonstrated that he can prove this essential element of his claim.

To bring a successful claim under the LPLA, a plaintiff must prove that defendants were manufacturers of the allegedly defective product that caused damage. *See Tunica-Biloxi Indians of La. v. Pecot*, 2006 WL 273604, at *4 (W.D. La. Feb. 2, 2006) (summary judgment granted in favor of defendant who did not qualify as manufacturer under LPLA); *Matthews v. Wal-Mart Stores, Inc.*, 708 So. 2d 1248 (La. App. 1998) (no recovery for plaintiff who "failed to prove entitlement to recovery under the LPLA" where plaintiff failed to prove defendant was manufacturer). Because Moore has not submitted any evidence to show that the airbag was original to the vehicle, no reasonable juror could conclude that any of the Defendants was a manufacturer of the airbag.[54] *See Performance Contractors, Inc. v. Great Plains Stainless, Inc.*, 2012 WL 5398534, at *7 (M.D. La. Nov. 2, 2012) (summary judgment appropriate where plaintiff failed to present evidence that defendant was manufacturer under LPLA).

### 2. Theories of liability under LPLA

Even if Defendants were the manufacturers of the airbag that allegedly caused Moore's injuries, Moore has failed to submit sufficient evidence to sustain a claim under any of the LPLA's four theories of liability.

#### a. Unreasonably dangerous in construction or composition

"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical

---

[53] R. Doc. 114 at 4-5 (citing R. Doc. 114-1, the affidavit of Barry Hare).
[54] Nor does Moore present any summary judgment evidence that Toyota Motor Engineering & Manufacturing North America, Inc. had any responsibility for the marketing, advertising, or distribution of Gross' Toyota Corolla.

products manufactured by the same manufacturer." La. R.S. 9:2800.55. "Accordingly, a claimant must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'" *Welch v. Technotrim, Inc.*, 778 So. 2d 728, 733 (La. App. 2001) (citations omitted).

Here, Moore has presented no evidence as to the manufacturer's specifications or performance standards for producing the airbag, nor has Moore submitted evidence to show how a flaw in the manufacturing process caused his particular airbag to be defective. Instead, Moore points to the crash and his resulting injuries as proof that a manufacturing defect must have existed.[55] However, neither conclusory allegations nor speculative discovery responses can defeat an adequately-supported motion for summary judgment. Without evidence as to how Moore would prove the existence of a manufacturing defect at trial, summary judgment for Defendants would appear warranted on his manufacturing defect claim. *See id.* at 734 (manufacturing defect is not presumed from the "mere fact that an accident occurred").

But Moore insists he plans to invoke the doctrine of *res ipsa loquitur* in an effort to prove the existence of the defect. In a products liability case under Louisiana law, *res ipsa loquitur* may be used to establish a manufacturer's liability. *Lawson*, 938 So. 2d at 49. However, *res ipsa loquitur* is unavailable where the evidence does not "sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides defendant in causing the accident," and the plaintiff disposes of "direct evidence" that would have supported such an inference. *Id.* at 50-51.

---

[55] R. Doc. 98-3 at 9-10.

In *Lawson*, the plaintiff sought to use *res ipsa loquitur* to establish the defendant's liability under the LPLA for a defective airbag. The plaintiff theorized that the clock spring, a key component in activating the airbag, was misaligned at the factory. About one month after the plaintiff's accident, the plaintiff's experts disassembled the airbag for inspection. Prior to disassembly, the plaintiff's experts did not mark the position of the clock spring. Given the plaintiff's handling of the evidence, the defendant contended that it was impossible to know whether the clock spring was misaligned. The Louisiana court of appeal held that the absence of direct evidence precluded the plaintiff's dependence upon *res ipsa loquitur* to establish the defendant's liability for a manufacturing defect:

> Was this accident the result of a *manufacturing defect,* as defined by the Louisiana Products Liability Act? Was the clock spring misaligned at the factory (*i.e.,* defectively installed)? Or, could a misalignment have occurred if the air bag system was accessed by a third party (perhaps a previous owner) in an effort to repair something within the steering column? No one knows for sure. None of the experts knows the *cause* of the clock spring's malfunction. Further, there are no service records from the Plaintiffs, and the instant record contains no information regarding the vehicle's maintenance during its ownership by the rental car company. Had the Plaintiffs' experts not tampered with the positioning of the clock spring, direct evidence would have been available to prove or disprove the Plaintiffs' theory of misalignment. We do not believe that the Plaintiffs should be able to take advantage of the doctrine of *res ipsa loquitur,* since *direct evidence* of a possible misalignment was available prior to Plaintiffs' disassembly of the supplemental restraint system. Additionally, Plaintiffs did not adequately address the probability that a previous owner had accessed, and therefore misaligned, the clock spring mechanism.

*Id.* at 51 (emphasis in original).

Setting to the side Moore's failure to offer any theory of why the airbag allegedly deployed, the car and the airbag module and components would necessarily be essential direct evidence of any such theory. As in *Lawson*, Moore's handling of the direct evidence precludes his resort to the doctrine of *res ipsa loquitur*. Moore did not have an inspection of the vehicle's airbag done at purchase or after the accident, and the vehicle is now unavailable. To be sure, Moore does not

13

know where the vehicle is. Instead, Moore relies upon unhelpful photographs of the vehicle and yet-to-be offered car reports. Neither constitutes direct evidence of a possible defect. *See Dortch v. Doe*, 217 So. 3d 449, 454 (La. App. 2017) (affirming summary judgment in products liability case where plaintiff failed to locate vehicle or to offer expert testimony). Thus, because Moore has not sufficiently excluded the possibility of his own responsibility or that of others for his injuries, and because he has disposed of the only direct evidence that could have allowed him to do so, under *Lawson*, he cannot avail himself of the doctrine of *res ipsa loquitur.*

### b. Unreasonably dangerous in design

Section 9:2800.56 of the LPLA defines an "unreasonably dangerous in design" product as one that "if, at the time the product left its manufacturer's control," the following elements are met:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

A plaintiff must prove "that an alternative design existed" at the time the product was manufactured and perform a risk-utility analysis whereby "the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have exceeded the burden of switching to the alternative design (added construction costs and loss of utility)." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 701 (5th Cir. 2012). The proposed alternative design "must be reasonably specific and not based on mere speculation." *Id.* (citing *Seither v. Winnebago Indus., Inc.*, 853 So. 2d 37, 41 (La. App. 2003)).

14

Here, Moore performs no risk-utility analysis and offers no more than mere speculation of the most conclusory sort about alternative airbag designs – namely, one "that does not spontaneously deploy."[56] To the extent Moore's suggestion that the alternative airbag design not use sodium azide is more acceptably specific, it is nevertheless untested by an expert's analysis.[57] Moore has engaged no expert. Without scientifically viable evidence to show that an alternative design would have prevented the accident and without a risk-utility analysis, summary judgment for Defendants on Moore's design claim is appropriate. *See Broussard v. Proctor & Gamble Co.*, 463 F. Supp. 2d 596, 611 (W.D. La. 2006).

### c. Unreasonably dangerous because of inadequate warning

Under the third theory of LPLA liability, a manufacturer must exercise reasonable care to give an adequate warning for a product that "possessed a characteristic that may cause damage" at the time the product leaves its manufacturer's control. A manufacturer is liable for failure to exercise reasonable care in providing notice of the characteristic and its danger to users and handlers of the product. La. R.S. 9:2800.57(A). A manufacturer has a continuing duty to provide an adequate warning after the product leaves its control when the manufacturer obtains actual knowledge about "a characteristic that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer." *Id.* 9:2800.57(C). However, a manufacturer is not liable for failing to warn when:

> (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or

---

[56] *Id.* at 10; R. Doc. 101 at 3. Moore effectively concedes he has not proposed a sufficient alternative design by urging in his opposition that "[s]imply because the plaintiff has not identified a specific model at this time does not indicate that … he will not be able to produce or identify one at a trial on the merits." R. Doc. 101 at 3. A plaintiff must do more in opposing a motion for summary judgment than to make a faint promise of future proof.

[57] R. Doc. 114 at 8. Defendants note that the driver side airbag module original to the 2009 Toyota Corolla had not been the subject of a recall related to exploding airbag inflators or ruptured airbags. R. Docs. 114 at 4; 114-1 at 4.

15

> (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

*Id.* 9:2800.57(B).

To prevail on an inadequate warning claim, a plaintiff must not only show that the warning provided was inadequate but also propose an adequate warning that, if provided, "would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product in such a manner as to avoid the danger for which the claim was made." *Seither*, 853 So. 2d at 42 (quoting the definition of "adequate warning" set out in La. R.S. 9:2800.53(9)) (dismissing plaintiff's inadequate warning claims where plaintiff presented no expert testimony concerning warnings or any language of a proposed adequate warning). Additionally, a plaintiff must demonstrate that the unreasonably dangerous condition which gives rise to the need for the warning existed at the time the product left the control of its manufacturer or resulted from a reasonably anticipated alteration or modification of the product. La. R.S. 9:2800.54(C).

Defendants argue that Moore has simply not identified an inadequate warning or proposed any alternative warnings to support his claim. Moore offers no argument and points to no evidence to refute Defendants' contention that they are entitled to summary judgment on this claim.

### d. Unreasonably dangerous because of nonconformity to express warranty

Section 9:2800.58 of the LPLA defines a product as unreasonably dangerous "when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." The uncontradicted evidence shows that Moore and Gross did not depend upon an express warranty when Gross purchased the vehicle. Rather, Moore and Gross purchased the vehicle in part for its

16

low mileage and low price.[58] Because Moore makes no argument and points to no evidence to refute Defendants' contention that they are entitled to summary judgment on this claim, summary judgment is warranted. *See Broussard*, 463 F. Supp. 2d at 611 (granting summary judgment where plaintiffs only offered conclusory allegations instead of "supporting evidence that any express warranties were made").

IV. **CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that the Defendants' motion for summary judgment (R. Doc. 98) is GRANTED, and all of the claims of plaintiff, Robert L. Moore against Toyota Motor Sales, U.S.A., Inc., Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America, Inc., and Toyoda Gosei Co., Ltd. are dismissed with prejudice.

New Orleans, Louisiana, this 14th day of March, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[58] R. Doc. 98-3 at 47, 198.